Mr. David W. Wagner Alachua County Attorney Post Office Box 2877 Gainesville, Florida 32602-2877
Dear Mr. Wagner:
On behalf of the Alachua County Board of County Commissioners, you ask substantially the following question:
Are records of outside attorney fee bills for the defense of the county, as well as its employees who are sued individually, for alleged civil rights violations subject to disclosure under Chapter 119, Florida Statutes, where those records are maintained by the County Risk Management Office pursuant to the county's risk management program?[1]
In sum:
Records of outside attorney fee bills for the defense of the county, as well as its employees who are sued individually, for alleged civil rights violations are public records subject to disclosure, even though those records may be maintained by the County Risk Management Office pursuant to the county's risk management program.
Section 119.011(1), Florida Statutes, defines "Public records" for purposes of Florida's Public Records Law to include
"all documents, papers, letters . . . or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency."
The Florida Supreme Court has interpreted this definition to include all materials made or received by an agency in connection with official business that are used to perpetuate, communicate, or formalize knowledge.[2]
Clearly, records of attorney fee bills received by the county's risk management office under the county's risk management program constitute public records.[3] As such, these records are subject to disclosure in the absence of a statute making them confidential or exempt from disclosure.[4] In Attorney General Opinion 85-89, this office concluded that a contract between a county and a private law firm for the provision of legal services, and documentation for invoices submitted by the firm to the county, did not fall within the work product exemption afforded by section119.07(3), Florida Statutes.[5] If the bills and invoices contain information exempted by section 119.07(3)(l), Florida Statutes — that is, mental impressions, conclusions, litigation strategies, or legal theories — the exempt material may be deleted but the remainder must be disclosed.[6]
You refer to section 768.28(15), Florida Statutes, authorizing the state and its agencies and subdivisions to be self-insured, to enter into risk management programs, or to purchase liability insurance, or any combination thereof, in anticipation of any claim, judgment, or claims bill they may be liable to pay pursuantto section 768.28, Florida Statutes. Subsection (15)(b) of the statute provides:
"Claims files maintained by any risk management program
administered by the state, its agencies, and its subdivisions areconfidential and exempt from the provisions of s. 119.07(1) and s. 24(a), Art. I of the State Constitution until termination of alllitigation and settlement of all claims arising out of the sameincident, although portions of the claims files may remain exempt, as otherwise provided by law. Claims files records may be released to other governmental agencies upon written request and demonstration of need; such records held by the receiving agency remain confidential and exempt as provided for in this paragraph."[7] (e.s.)
Section 768.28(2), Florida Statutes, defines "state agencies or subdivisions" to include, among others, "counties."
Application of the exemption afforded by section 768.28(15), Florida Statutes, is limited to tort claims for which the agency may be liable under 768.28, Florida Statutes. Your inquiry, however, involves federal civil rights laws actions and liability under 42 United States Code section 1983.
You also refer to a staff analysis of the 1994 amendment to the exemption statute, which states that the types of documents in a claims file include "invoices from . . . defense firms[.]"[8] To the extent that the staff analysis is indicative of legislative intent, there is nothing indicating that the term should be given such a broad construction. Exemptions to the Public Records Law are to be narrowly construed.[9] Moreover, in discussing what is contained in the claims file, the staff analysis refers to materials that are relevant to an assessment or an evaluation of the claim. While the staff analysis refers to "invoices," that term should be construed in light of the other types of information referenced.[10] While an invoice may contain information relevant to the claims assessment such as a discussion of the nature of the work performed, an invoice indicating only the hours worked and amount to be paid by the public agency would not appear to constitute the type of information intended for exemption.
Therefore, I am of the opinion that records of outside attorney fee bills for the defense of the county, as well as its employees who are sued individually, for alleged civil rights violations are public records subject to disclosure, even though those records may be maintained by the County Risk Management Office pursuant to the county's risk management program.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tgk
[1] You also ask about the Rules of Professional Conduct. Questions relating to the Rules of Professional Conduct should be addressed to The Florida Bar which has been delegated the authority to interpret the rules by the Florida Supreme Court.
[2] See, Shevin v. Byron, Harless, Schaffer, Reid andAssociates, Inc., 379 So.2d 633, 640 (Fla. 1980). And see, s.119.011(2), Fla. Stat., defining "Agency" as
"any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law . . . and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency."
[3] You refer to the Order on Petition for Declaratory Judgment, Petition for Writ of Mandamus, Alternative Writ of Mandamus and Permanent Injunction in Times Publishing Company v. Acton, Case No. 99-8304 (Fla. 13th Jud. Cir. Hillsborough County, November 5, 1999), for the proposition that the payment of legal fees by the county does not render the supporting records of private attorneys subject to Ch. 119, Fla. Stat. The records being sought in that action were in the hands of the private attorneys. Your inquiry, however, concerns records that have been received by the county under its risk management program and thus clearly fall within the definition of public records as material received by an agency,i.e., the county in connection with official business.
[4] Cf., Wait v. Florida Power Light Co., 372 So.2d 420 (Fla. 1979), stating that it is the Legislature, not the courts, that has the authority to exempt records from disclosure under Ch. 119, Fla. Stat.
[5] The exemption, then contained in s. 119.07(3)(o), Fla. Stat. (1984 Supp.), is now found at s. 119.07(3)(l), Fla. Stat. The exemption protects records prepared by an agency attorney (including an attorney retained by the agency or by another public officer or agency to represent the interests of the agency having custody of the record) or prepared at the attorney's express direction, which reflect a mental impression, conclusion, litigation strategy, or legal theory of the attorney or the agency, and which was prepared exclusively for civil or criminal litigation or for adversarial administrative proceedings, or which was prepared in anticipation of imminent civil or criminal litigation or imminent adversarial administrative proceedings, until the conclusion of the litigation or adversarial administrative proceedings.
[6] Attorney General Opinion 85-89 (1985) concluded, however, that information such as the hours worked or hourly wage would not fall within the scope of the exemption. And see, Smith Williams,P.A. v. West Coast Regional Water Supply Authority, 640 So.2d 216
(Fla. 2d DCA 1994) (agency which improperly "blocked out" most notations on invoices prepared in connection with services rendered by and fees paid to attorneys representing agency improperly withheld nonexempt material by failing to limit redactions to those items "genuinely reflecting its `mental impression, conclusion, litigation strategy, or legal theory'").
[7] Cf., s. 768.28(15)(c) and (d), Fla. Stat., providing a limited exemption from s. 286.011, Fla. Stat., and s. 24(b), Art.I, Fla. Const., for portions of meetings and proceedings, and the minutes of such meetings and proceedings, conducted pursuant to any risk management program which relate solely to the evaluation of claims filed with the risk management program or which relate solely to offers of compromise of claims filed with the risk management program. Until termination of all litigation and settlement of all claims arising out of the same incident, persons privy to discussions pertinent to the evaluation of a filed claim shall not be subject to subpoena in any administrative or civil proceeding with regard to the content of those discussions.
[8] House of Representatives Committee on Governmental Operations Final Bill Analysis Economic Impact Statement on HB 531 (as passed by the Legislature as Ch. 94-76, Laws of Florida), dated March 23, 1994, p. 6, which states:
"The types of documents in a claims file include accident reports by police, sheriff, and highway patrol officers; investigative reports; legal pleadings; reports and correspondence from defense counsel evaluating potential liability, potential damages, and providing recommendations regarding settlement; correspondence relating to the accident or incident; doctors' reports and reports from other medical experts or health providers including medical test results, patient medical histories, medications and treatments; damage estimates in the case of automobile accidents or water vessel accidents; reports by experts who are requested to be potential expert witnesses regarding liability and damages; correspondence from and to insurance adjusters relating to, for example, offers of compromise; notations relating to the facts in the case; invoices from experts and defense firms; names of investigators; amount of money available for litigation and settlement; "SeFes" scores (an evaluation score used in determining whether or not a suit should be defended or settled); personnel records; recorded or signed statements taken as possible evidence; risk management program evaluations of hazardous conditions; supervisor and claims committee notes pertaining to defense strategies; minutes of peer review meetings; Department of Professional Regulation defense files, and Trust Fund Council meeting minutes (public hospitals are "agencies" affected by the claims file law); anonymous correspondence; surveillance reports, photographs, and recordings; expert witness reports; and case evaluation statements from for example school principals, teachers, and bus drivers (school districts are also "agencies" affected by the claims file law)."
[9] See, e.g., Krischer v. D'Amato, 674 So.2d 909, 911 (Fla. 4th DCA 1996).
[10] Cf., Turnberry Isle Resort and Club v. Fernandez,666 So.2d 254 (Fla. 3d DCA 1996) (under doctrine of "noscitur a sociis" meaning of terms and intent behind them may be discovered by referring to words associated with them); Cepcot Corporation v.Department of Business and Professional Regulation, ConstructionIndustry Licensing Board, 658 So.2d 1092 (Fla. 2d DCA 1995) (under doctrine of "noscitur a sociis" court examines other words used within string of concepts to derive legislature's overall intent).